**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NAOMI S. ANDREWS,
Plaintiff-Appellant,

v.                                                                          No. 99-1783

COMMONWEALTH OF VIRGINIA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-98-691)

Argued: June 8, 2000

Decided: September 29, 2000

Before NIEMEYER and KING, Circuit Judges, and
Irene M. KEELEY, United States District Judge
for the Northern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kristin Downs Alden, PASSMAN & KAPLAN, P.C.,
Washington, D.C., for Appellant. Martha Murphey Parrish, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Joseph V. Kaplan, Lisa
M. Klein, PASSMAN & KAPLAN, P.C., Washington, D.C., for
Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Naomi Andrews brought this action in the District Court for the Eastern District of Virginia, alleging that the Virginia Department of Corrections ("VDOC"), an agency of the Commonwealth of Virginia, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., because it failed to provide reasonable accommodation for her disability. The district court granted summary judgment to the Commonwealth, and we affirm.

I.

After working for two years as a corrections officer with VDOC in Greensville, Virginia, Andrews voluntarily transferred to its Mecklenberg Correctional Center, a maximum security facility, in 1994. She had become partially fecal incontinent following surgery in September, 1992, but had not had any difficulties while working for VDOC in Greensville. After her transfer to Mecklenberg, however, she requested accommodation from VDOC in order to perform her work as a corrections officer there because she did not want to work the midnight shift or in posts that did not have immediate access to bathroom facilities. Accordingly, her requested accommodation was to work only two of the three shifts and in only a dozen or so of the more than eighty posts staffed by corrections officers at Mecklenberg.

Meanwhile, in an application for disability benefits, Andrews attached a sworn statement averring that her incontinence prevented her from working as a corrections officer because she could not leave inmates unsupervised while she used the restroom. She also noted that her disability prevented her from being away from home for extended periods, going to the grocery store, church, or eating out.

In her complaint, Andrews alleges that VDOC denied her request for reasonable accommodation for her handicap by placing her on

2

administrative leave without pay and discharging her, all in violation of the ADA.

II.

We review a grant of summary judgment de novo. See, e.g., Cooper v. Laboratory Corp. of America Holdings, Inc. , 150 F.3d 376, 379 (4th Cir. 1998). Summary judgment is appropriate if"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

A.

The ADA prohibits discrimination against a "qualified individual with a disability . . . in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to prove a prima facie case of discrimination, a plaintiff must establish: (1) she has a "disability"; (2) she is a "qualified individual"; and (3) the employer "discriminated against her because of her disability." See Martinson v. Kinney Shoe Corp. , 104 F.3d 683, 685 (4th Cir. 1997); Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

Although the Commonwealth conceded before the trial court that Andrews has a "disability," it has denied that she is a "qualified individual with a disability" "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To determine whether a disabled individual is "qualified," courts consider: (1) whether the individual can perform the essential functions of the job at issue; and (2) if not, whether any reasonable accommodation by the employer would enable the individual to perform these functions. Tyndall v. National Educ. Ctrs. , 31 F.3d 209, 213 (4th Cir. 1994).

"Essential functions" are defined as "the fundamental job duties of the employment position the individual with a disability holds or

3

desires." 29 C.F.R. § 1630.2(n)(1). Evidence of whether a particular function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3) (1998).

Essential functions of the job of corrections officer at Mecklenberg include the ability to work "all shifts/or posts" and to supervise inmates from assigned posts in order to maintain security, custody, control and safety. The employer states that the"all posts/all shifts" requirement enhances programmatic and fiscal efficiency and encourages high morale. According to the Commonwealth, Andrews is unable to meet these job requirements because other corrections officers and inmates would be placed in danger if she had to leave her post unmanned to gain immediate access to a restroom as a result of her disability. Restrooms are not readily accessible from many of the posts, and Andrews' disability precludes her from using the restroom only at scheduled break times.

Even if Andrews could not perform the essential functions of the job without accommodation, she would still be a qualified individual with a disability if she could perform the essential functions of the job with a reasonable accommodation. "Reasonable accommodation" is defined as: "Modifications or adjustments to the work environment, or to the manner or circumstances under which the position is held or desired, is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

In providing accommodation, an employer has the"ultimate discretion to choose between effective accommodations, and may choose

4

the accommodation that is easier for it to provide." 29 C.F.R. § 1630.9, Appendix III. The reasonableness of an accommodation is assessed objectively, and is not viewed subjectively from the concerns of either party. See Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 350 (4th Cir. 1996).

Andrews argues that the Commonwealth's proposed accommodations of her disability were unacceptable. These proposals included suggestions that she wear Depends undergarments (as worn by other incontinent employees at VDOC), apply for a non-security position with VDOC, or work the least demanding security post and shift. Andrews rejected the first two proposals but attempted the third, working the midnight shift in an unlocked control room with immediate access to a restroom. She subsequently rejected this accommodation on the ground that it exacerbated her medical condition. The Commonwealth denied Andrews' request to work either the day or evening shift in any one of the dozen or so corrections officer posts at the institution that she had selected, on the basis that it could not provide her with immediate back-up coverage in such posts so she could use the restroom at a moment's notice.

In assessing whether an offered accommodation is reasonable, the ADA itself provides guidance, listing illustrative measures such as modifying work schedules and reassigning disabled employees to vacant positions. 42 U.S.C. § 12111(9)(B). See also Williams, 101 F.3d at 350. We find that the accommodations offered by the Commonwealth were objectively reasonable and, therefore, Andrews' rejection of the proposed accommodations removes her from the category of "qualified individuals with a disability." Accordingly, we affirm the district court's determination that Andrews was not "otherwise qualified" to perform the essential functions required of a corrections officer.

B.

Relying on the decision of the United States Supreme Court in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), Andrews further argues that the district court erred when it ruled that her application for disability retirement disqualifies her as an individual with a disability under the ADA. In Cleveland, the Supreme Court held

5

that a disabled employee was entitled to an opportunity to explain the discrepancy between her statement that she was totally disabled when seeking SSI benefits, and her claim that she could perform the essential functions of her job in pursuing her ADA claim.

In light of <u>Cleveland</u>, we find that the district court's holding that Andrews was estopped from altering the position she had advanced under oath in her application for disability benefits was erroneous. However, we further find that such error was harmless in light of the district court's additional finding that Andrews was also not "otherwise qualified" to perform the essential job functions of a corrections officer.

III.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

6